JOURNAL ENTRY AND OPINION
{¶ 1} In this consolidated class-action appeal, Kristine Bartley and Shelton J. Coleman ("Coleman and Bartley") appeal the trial court's decision excluding various Wells Fargo Bank entities from class certification. Coleman and Bartley assign the following error for our review:
 "I. The trial court erred in the scope of the class it certified. T.D. June 1, 2007."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} In April 2002, Coleman filed a class action complaint against Wells Fargo Bank West, N.A. ("WFBW") on behalf of himself and "all persons who since January 26, 1996 paid off residential mortgages in Ohio where Wells Fargo Bank West, N.A. * * * was the mortgagee, and where the mortgage satisfaction was not recorded within 90 days of satisfaction" as required by R.C. 5301.36(B). In May 2002, Bartley filed a parallel class action complaint against Wells Fargo Home Mortgage, Inc. ("WFHMI") and also alleged violations of R.C. 5301.36(B). Under R.C. 5301.36(C), the violation entitled all class members to automatic damages in the amount of $250.
 {¶ 4} Subsequent to the filing of the respective complaints, in late 2003 and early 2004, WFBW and WFHMI as well as several other banking and non-banking subsidiaries of Wells Fargo Company underwent a corporate *Page 2 
restructuring. As a result of this restructuring, WFBW and WFHMI were consolidated.
 {¶ 5} Thereafter, Coleman and Bartley sought to expand the proposed class definition to include affiliates, subsidiaries, and related lending institutions of Wells Fargo Bank and Wells Fargo and Company. The parties filed briefs and supporting materials regarding whether the action should be maintained as a class action, and if so, whether the scope of the class should be expanded to include Wells Fargo Bank and Wells Fargo Company.
 {¶ 6} On September 28, 2006, the trial court conducted a hearing on the motion. The hearing only addressed the scope of the class to be certified, because prior to the hearing WFBW and WFHMI had stipulated that a class should be certified. At the hearing, Coleman and Bartley argued that the certified class should include customers of all affiliates, subsidiaries, and related lending institutions of Wells Fargo Bank and Wells Fargo Company.
 {¶ 7} On June 4, 2007, the trial court issued an order certifying the class, but did not include Wells Fargo Bank, and Wells Fargo Company, nor any of its affiliates, subsidiaries, or related lending institutions. The court then went on to define the class as:
 "All persons who at any time from February 22, 1996, and thereafter paid off an Ohio residential mortgage (as defined by R.C. 5301.36) where Wells Fargo Bank West, N.A., Norwest Bank Colorado, N.A., or any other entity acquired by or *Page 3 merged into Wells Fargo Bank West, N.A., owned the mortgage at the time of payoff, or was listed as the mortgagee, or reflected as the owner of the mortgage on the release; and the mortgage satisfaction was not recorded with any Ohio county recorder within ninety (90) days from the date of payoff."
 Scope of Class {¶ 8} In their sole assigned error, Coleman and Bartley argue the trial court erred in limiting the class to WFBW and WFHMI. We disagree.
 {¶ 9} At the outset, we are mindful that a trial judge is given broad discretion when deciding whether to certify a class action.[1]
Therefore, we must consider whether the trial court's judgment was the result of an unreasonable, arbitrary, or unconscionable attitude.[2]
Absent a showing of abuse of discretion, a trial court's determination as to class certification will not be disturbed.[3] The abuse of discretion standard of review is employed because of the inherent power of the trial court to manage its own docket based upon its special expertise and familiarity with case-management problems.[4] *Page 4 
 {¶ 10} Class certification in Ohio is based upon Rule 23 of the Ohio Rules of Civil Procedure, which is identical to Rule 23 of the Federal Rules of Civil Procedure.[5] The class action is an invention of equity. Its purpose is to facilitate adjudication of disputes involving common issues between multiple parties in a single action.[6]
 {¶ 11} "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into
 {¶ 12} something worth someone's (usually an attorney's) labor."[7]
Thus, the primary rationale of the class action is to promote efficiency and economy in litigation.[8] *Page 5 
 {¶ 13} In Warner v. Waste Management, Inc., [9] the Ohio Supreme Court set forth seven elements for a class to be certified. The first step is to ascertain whether the threshold requirements of Civ. R. 23(A) have been met. Once those requirements are established, the trial court must turn to Civ. R. 23(B) to discern whether the purported class comports with the factors specified therein. Four prerequisites are explicitly set forth in Civ. R. 23, while two prerequisites are implicit in the rule.[10]
 {¶ 14} The four delineated prerequisites in Civ. R. 23(A) include the following: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and *Page 6 
defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[11]
 {¶ 15} In the instant case, the parties agreed that a class should be certified. However, Coleman and Bartley argue that the trial court abused its discretion in limiting the class it certified to the originally named defendants. Specifically, Coleman and Bartley argue that Wells Fargo Bank and Wells Fargo Company, operate as a unitary system, and as such, should have been included in the certified class. We are not persuaded.
 {¶ 16} For the reasons that follow, we conclude that the trial court correctly determined that only the originally named defendants' customers should be members of the certified class.
 {¶ 17} When the action was commenced, Coleman and Bartley filed parallel class action complaints on behalf of themselves and a distinct set of customers. Specifically, the complaints were filed on behalf of Ohio customers, who had mortgage loans with either WFBW or WFHMI, and since January 26, 1996, had mortgage satisfactions which were not recorded within 90 days of satisfaction. *Page 7 
Thus, it is undisputed that Coleman and Bartley knew which customers they sought as members of the certified class.
 {¶ 18} In the instant case, despite Coleman and Bartley's contention that the Wells Fargo system is unitary in nature, and that the originally named defendants are defunct and no longer exist, we conclude that the record establishes that WFBW's and WFHMI's customers are readily identifiable. At the hearing on the motion to determine the scope of the class to be certified, the attorney for the WFBW and WFHMI testified as follows:
 "Ms. Hughes: Our position is that there's no reason for you to change the scope of the class on whose behalf they originally brought the case. That group is still identifiable. Their records are still easy to find. They are easy to — easy to segregate from other files kept by the entire Wells Fargo organization. And, in fact, they are still kept separately. They are still used — they still use a separate computer system."[12]
 "* * *
 "Ms. Hughes: And, they brought it on behalf of the customers of the two named defendants. Those defendants don't exist as separate entities anymore, but that doesn't mean someone is trying to shirk the debt or won't participate in a settlement or judgment. We will. That's what we have been saying. Of course we will."[13]
 "* * * *Page 8 
 "Ms. Hughes: There's no practical reason for abandoning that first class they identified. As I said, they operate as a separate division of the company. Their files are still locatable. Their computer system is separate. And, their employees who handle those types of files are largely unchanged since before the charter consolidation, and since this lawsuit has been brought."[14]
 {¶ 19} Thus, despite the fact that WFBW and WFHMI no longer operate as separate legal entities, it is clear from the record that their customers are readily identifiable and ascertainable. As such, the certified class was properly limited to the customers of the originally named defendants.
 {¶ 20} In addition, despite Coleman and Bartley's claim that Wells Fargo Company is a unitary operation, and, therefore, all its customers in Ohio should be part of the certified class, Coleman and Bartley clearly recognized from the outset of the litigation that Wells Fargo Company contained different entities. At the commencement of the litigation, two representative plaintiffs were identified, Coleman and Bartley.
 {¶ 21} Further, two separate companies, WFBW and WFHMI, were identified as defendants. These were the companies that were served, appeared, and took part in the litigation. Thus, the trial court properly limited the *Page 9 
members of the certified class to those customers of the originally named defendants.
 {¶ 22} Moreover, certifying a class as proposed by Coleman and Bartley would violate due process and result in a void judgment. It is the hallmark of our system of justice that personal rights cannot be compromised without due process.[15] Fundamental due process requires notice to the defendant sufficient to apprise him of the pending action so he may present his objections thereto.[16] In order for a court to render a valid judgment against a party, the court must have jurisdiction over the person against whom the judgment is rendered, as well as the subject matter at issue.[17]
 {¶ 23} Here, the record indicates that Wells Fargo Bank and Wells Fargo Company were never served, never appeared, and never participated in the underlying action. Consequently, the trial court had no jurisdiction over Wells Fargo Bank or Wells Fargo Company. Thus, a judgment absent jurisdiction becomes a nullity and is void ab initio.[18]
 Juridical Link *Page 10 {¶ 24} Nonetheless, Coleman and Bartley argue the certified class should have been expanded based on the "juridical link" doctrine. The concept of "juridical link" has not been adopted in Ohio. It is a judicially created concept defined as a "legal relationship which relates all defendants in a way such that a single resolution of the dispute is preferred to a multiplicity of similar actions."[19] It involves a bilateral class action where both plaintiff and defendant classes are certified.[20] Absent such juridical link, a defendant class fails the test requiring a case or controversy to support the assertion of jurisdiction.[21]
 {¶ 25} LaMar was the first case to use the doctrine. InLaMar, the representative plaintiffs lacked a cause of action against the defendants, individually; consequently, they alleged in their complaint a common methodology of injury, which would unite otherwise unrelated defendants. LaMar held that the class representatives could not include those defendants it had no cause of action against and from whom they had suffered no harm. The court went on to form the juridical link exception. Thus, in order to utilize the exception, the plaintiff must show that they fit within the exception. The fit that *Page 11 
we recognize is the requirement that the plaintiffs must have a cause of action against each defendant, which means that the representatives must personally be able to assert a "right to relief" against the defendants. In this case, all the defendants were separate entities at the time of the harm. Coleman and Bartley asserted a claim against the defendants that caused them harm. They cannot now under juridical link seek to join defendants who were not originally joined at the outset. Coleman and Bartley cite two cases, Weiss v. Winners Circle[22] andBarker v. FSC Sec. Corp.[23] In Barker, the court discussed juridical link to support its argument for expansion of the exception as follows:
 "A juridical link sufficient to justify class certification `generally must stem from an independent legal relationship. Partnership, joint enterprise, control, conspiracy, and aiding and abetting all may serve as such a link, since they denote some form of activity or association on the part of the defendants that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member."'[24]
 {¶ 26} In both Barker and Weiss, the plaintiffs sued each defendant against whom they sought to assert a claim. In the instant case, Coleman and Bartley named only WFBW and WFHMI as defendants, and then sought to have the *Page 12 
certified class expanded to include entities over which the trial court had no jurisdiction.
 {¶ 27} In Barker, the plaintiffs alleged that one of the defendants, Gene Flannes, a financial advisor, embezzled their money while he was an authorized representative of two employers, First Securities Corporation and West America. In Barker, the court determined that the plaintiffs' claims presented common issues regarding the employers' negligent supervision; thus, the plaintiffs could maintain their claims against both First Securities Corporation and West America. Most notably, unlike here, the plaintiffs specifically named First Securities Corporation and West America as defendants.
 {¶ 28} In Weiss, the plaintiffs filed their original complaint in May 1991, against Winner's Circle of Chicago, Inc., Bailey Associates, Inc., and William H. Bailey. The complaint alleged that the defendants sold campground memberships through fraudulent prize mailings and sales presentations in violation of the RICO Act, the Illinois Consumer Fraud Act, and in breach of contract.
 {¶ 29} On April 14, 1995, the plaintiffs filed a second amended class action complaint adding defendants DVL, Finova, and Tammac. The complaint alleged that the additional defendants were assigned the retail installment contracts which class members had entered into with Winner's Circle of Chicago, Inc., Bailey Associates, Inc., and William H. Bailey. DVL, Finova, and Tammac argued that the claims against them should be dismissed on grounds including that the plaintiffs *Page 13 
lacked standing. However, the court determined that DVL, Finova, and Tammac should be included in the lawsuit because plaintiffs' claims arose from the same series and transactions, namely the sale of campground memberships, which were subsequently assigned to the three additional defendants.
 {¶ 30} Again, as in Barker, and unlike here, the Weiss plaintiffs specifically named as defendants the entities they sought to include in the class. Thus, each named defendant was afforded the opportunity to assert defenses against the claims of the plaintiffs. Further, the trial court had jurisdiction over these named defendants and could enter a valid judgment against them.
 {¶ 31} Based on the foregoing, the trial court did not act in an unreasonable, arbitrary, or unconscionable manner in declining to adopt the proposed "juridical link" doctrine and expand the scope of the class certified. Juridical link must not be used to bypass class action rules, joinder issues, due process rules, and timeliness rules. As such, the trial court did not abuse its discretion in limiting the certified class to the originally named defendants. Accordingly, we overrule Coleman and Bartley's sole assigned error.
Judgment affirmed.
It is ordered that appellees recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. *Page 14 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 15 
COLLEEN CONWAY COONEY, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] Williams v. Countrywide Home Loans, Inc., 6thDist. No. L-06-1120, 2007-Ohio-5353, citing Marks v. C.P. Chem. Co., Inc.
(1987), 31 Ohio St.3d 200, syllabus.
[2] Baughman v. State Farm Mut. Auto Ins. Co., 88 Ohio St.3d 480, 483,2000-Ohio-397, citing Marks at 201.
[3] Cristino v. Adm'r, Ohio Bureau of Workers' Comp., Cuyahoga App. No. 87567, 2006-Ohio-5921.
[4] Hamilton v. Ohio Sav. Bank, 82 Ohio St.3d 67, 70,1998-Ohio-365.
[5] Ritt v. Billy Blanks Ents., 171 Ohio App.3d 204,2007-Ohio-1695.
[6] Barber v. Meister Prot. Servs., Cuyahoga App. No. 81553, 2003-Ohio-1520, citing Planned Parenthood Assn. of Cincinnati, Inc. v.Project Jericho (1990), 52 Ohio St.3d 56, 62.
[7] Amchem Prods., Inc. v. Windsor (1997), 521 U.S. 591, 613,117 S.Ct. 2231, 138 L.Ed.2d 689.
[8] Vaccariello v. Smith Nephew Richards, Inc., 94 Ohio St.3d 380,2002-Ohio-892.
[9] (1988), 36 Ohio St.3d 91.
[10] Id.
[11] Id. at 97, citing Civ. R. 23(A).
[12] Tr. 59-60.
[13] Tr. 68.
[14] Tr. 68-69.
[15] See, e.g., International Shoe Co. v. Washington (1945),326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.
[16] Harris v. Pitts (May 19, 1998), 10thDist. No. 97APF10-1293.
[17] Id., citing Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156.
[18] Surgical Servs. v. Cremeans, Cuyahoga App. No. 83493,2004-Ohio-2330.
[19] Bromley v. Michigan Education Association — NEA (E.D. Mich.,1998), 178 F.R.D. 148, citing LaMar v. H B Novelty LoanCo. (9th Cir. 1973), 489 F.2d 461, 462.
[20] Thillens, Inc. v. Community Currency Exchange Asso. (N.D. Ill. 1983), 97 F.R.D. 668, citing LaMar supra at 470.
[21] Id.
[22] (N.D. Ill. 1995), No. 91 C 2780.
[23] (W.D. Ark. 1989), 133 F.R.D. 548.
[24] Id., quoting Akerman v. Oryx Communications, Inc. (S.D.N.Y. 1984), 609 F. Supp. 363, 375. *Page 1